May it please the court. Good morning, your honors. Michael McFarlane on behalf of Ron Oules, Tim Reeb, and with me is Jerry Moberg, who represents the city of Brewster, but I will be making the arguments on behalf of all of the appellants today, and I failed to inform the clerk, but I would appreciate two minutes for rebuttal. There are two issues that are on appeal today. The first issue is whether or not Brewster Police Chief Ron Oules is entitled to qualified immunity from Ms. Solis' claim that he lacked reasonable suspicion for having initiated a traffic stop after observing her drive off the roadway into and through a private parking lot in what he believed to be an attempt to drive around and therefore fail to comply. The second issue is whether or not all three defendants are entitled to immunity pursuant to Smitty v. Varney from Ms. Solis' underlying claim for attorney fees and costs that she incurred defending against the criminal charges in the state court action. With respect to the first issue of qualified immunity, Chief Oules is entitled to a qualified immunity because he meets both standards under the two-part Saussure v. Katz qualified immunity analysis. If I can save you a little bit of time here, a client in your client's circumstance is entitled to bring an interlocutory appeal on the qualified immunity issue, correct? Yes. And that's a matter of law? That is, Your Honor. Is there any entitlement to bring the attorney fee claim before us on an interlocutory basis? I believe there is, Your Honor, because the attorney fee issue involves an immunity issue. Pursuant to Smitty v. Varney, the issue of whether or not that claim can be brought in the first place is an immunity issue, and I submit that the case laws make it clear. Well, it really is a measure of damages, isn't it, whether they can have damages of attorney's fees? It is a measure of damages. And, therefore, if it's a measure of damages, it would be decided by the district court. You'd have a chance to have a really good fight about that in front of the district court and could be reviewed on final judgment, could it not? It could, Your Honor. And, therefore, unless it truly is immunity instead of damages, then it shouldn't be here. I agree that if it was simply a matter of damages, it wouldn't be appropriate for interlocutory appeal, but would again point out the language in Smitty that says that this is an immunity issue. And if it truly is an immunity issue, then I submit that it's properly before the court today. Did I answer your question, Your Honor? Oh, yeah. All right. I'll tell you if you don't. Okay. Back to the qualified immunity issue then. As I was saying, under both prongs of Saussure, Chief Wools is entitled to qualified immunity. Under the first prong, Chief Wools did not violate one of Ms. Solis' constitutional rights, and specifically her Fourth Amendment right, because he had reasonable suspicion to initiate that traffic stop. And he had reasonable suspicion to initiate the traffic stop because of the two Washington statutes cited in the brief. RCW 4661-050 and RCW 4661-140. I would submit that the probably more applicable statute is the RCW 4661-050 having to do with obeying a traffic signal. What traffic signal? Excuse me, Your Honor? What traffic signal? The stop sign at the intersection of Bridge Street and Highway 97. Okay. Was there any sign saying don't turn? It was a left turn, wasn't it? What Ms. Solis did was approximately 50 yards or so. We all understand what she did. We've got these graphs and pictures and whatever. She turned left into what was a parking lot between the Shell Station owned by Chief Solis' father-in-law, right? Correct. And passed a fruit stand and then got on, what is that, State Route 97? Correct. Took a right on... Was there any sign in that area saying that you could not do that? No. So the traffic signal you're talking about is the traffic signal that was up at the intersection of Bridge Street and SR 97? That is correct. Okay. It's the stop sign that has traffic that is proceeding on Bridge Street stop before turning onto Highway 97 because Bridge Street intersects or tees with Highway 97. Yeah. There's not much I can say about those statutes, Your Honors. They say what they say and you can either interpret them as precluding this activity or not. I would submit, however, that when the statute says... Do you really think that RCW 4661-141 has any applicability here? I do, Your Honor, because... How does it have applicability? That statute requires drivers to remain in their lane of travel for all purposes unless to move out of it can be done safely, and I believe that when... Well, it was done safely. It didn't run into anybody. She did not, Your Honor. Sorry, she. She did not run into anybody. However, the reason that the enforcement was done in the first place is because there had been complaints from citizens of cars... Citizens or his father-in-law. There had been complaints from both, Your Honor, from the father-in-law and from citizens. What's this rectangular building on the right of Bridge Street as you head towards SR 97? I don't know. Okay. Would Minnesota have violated the statute you're talking about if she had turned right into the lot or whatever it is in front of that building? First of all, I believe there's a curb along that lane that would... Well, let's assume that there's a driveway and she had turned right into the driveway. Absolutely, Your Honor. She would have violated the statute. If she drives into that driveway and cuts the corner to get onto Highway 97 without stopping at that stop sign, yes. No, I thought you were referring to the statute that had to do about staying in your lane or something like that. I'm sorry. I misunderstood. I believe she would have violated that statute as well because, again, the reason she's leaving the lane of travel is to drive onto private property to avoid a stop sign. And your client knew that because... He knew that she was trying to avoid... He knew what her intent was because... And I think there's a debate on whether... I'm asking you to fill in the sentence. B knew she drove into that parking lot to avoid the signal ahead of her at the intersection of Bridge and 97 because she was trying to avoid the traffic signal. He knew this because... There were two cars stopped at the stop sign that she would have had to stop at, and he did not observe her stop in the parking lot. Therefore, no explanation for her having driven into that parking lot other than to avoid... He basically assumed that's why she did it. He did. Okay. And there is a fruit stand there, isn't there? There is. And was it closed that day? It was. Okay. Was the closure visible from the highway? It was. How? The way the fruit stand sits as you're driving up Bridge Street, if the fruit stand is open, the side of the little trailer that it is in is open, and it opens and closes such that if you're driving on Bridge Street, the direction Ms. Solis was traveling, you'd see that. Does the city of Brewster have a city attorney? Yes. And I assume that person, he or she, has a telephone? Yes. And the chief could have called that person and said, is this illegal? Certainly. And the response would have been, no. Well, we don't know what the response would have been because he didn't make that phone call, Your Honor. And I would submit that, in hindsight, there are different courses of conduct that chief fools could have pursued. However, under the second prong of the Saussure analysis, we don't require our officers or our officials to always pursue the most reasonable course of conduct. We look and ask, in hindsight, was it reasonable? It's okay to guess. It's not necessarily a guess, or it's not a guess in this case, Your Honor, because what he did do is contact the Washington State Patrol, and he did that because he believed the Washington State Patrol was the premier traffic enforcement agency in the state, contacted the Washington State Patrol and said, do you have this problem of corner cutting, and if you do, how do you respond to it? And was provided information from the trooper that works the Okanagan County area that, yes, indeed, they have that exact same problem at another location, and they do stop motorists who cut the corner there, and they stop them for failing to obey a traffic control device. I've asked a lot of questions and cut into your time. It's up to you. Well, I see I've got eight seconds left, so I'll save those eight seconds for rebuttal. Thank you. May it please the Court, I'm Janet Rice, representing the Plaintiff Appellee Alejandra Solis. We're asking the Court to affirm the district court's ruling denying qualified immunity to Chief Uhls and asking the Court to find that it does not have jurisdiction over the second issue, whether or not the plaintiff is entitled to the element of damages of attorney fees from the criminal trial. Which it would be entitled to under Section 1483. Briefly, in response to the second issue, we would submit that under Smitty v. Barney, which the appellant cites, it does not say that that issue is an immunity. It says that the prosecutor's decision to file a claim using independent judgment has an immunizing effect, and that's at 803 F. 2nd at 1472. That is not an immunity, however. A true immunity is an immunity that not only insulates the party from liability, but also prevents the party from being exposed to discovery and or trial. In this particular case, if we were not allowed to seek attorney's fees, we would still go forward on the 1983 action. So this is not an immunity issue. It does not fall within the collateral order doctrine, and we also submit that it does not fall within the pendant jurisdiction doctrine either because there aren't similar facts. But going to the main issue. And it isn't extrinsically intertwined? No, it's not extrinsically intertwined. Because? Because the facts are completely different. The issue has to do with whether or not the prosecutor had probable cause to file the assault and the third degree charges which followed from the stop and the charges of driving while license suspended and no valid operators, excuse me, no insurance. So there were three completely different charges that the prosecutor was looking at for probable cause. And in this particular case, we're looking at under the traffic statutes. Can we go to the main issue? Of course. With respect to the main issue, I would submit to the court that the prosecutor in its briefing and actually in its oral argument tries to argue that because the officer in this case talked to the Washington State Patrol, that he had a reasonable belief that there was a statute that prohibited cutting of corners. I must say I had the same reaction that the trial judge did, and I'm not an officer out on the street. I've been to law school. I have an advanced law degree. I spent four years as a federal prosecutor and 25 years of litigation. And if you had asked me, is this illegal, I would have said yes. Now, I understand that it's not, that the city of Brewster does not have an ordinance that addresses this issue, whereas a variety of other cities and towns in the state do. But what's wrong with the officer's reaction that this is an illegal use of private property to avoid congestion or whatever at a traffic signal? Well, I think what you're expressing is a general notion, and the superior court stated when describing its own opinion that he had a general notion, but when he looked at the statutes, he couldn't find a statute. And I would submit that your impression is like the layperson on the street. Yes, we might think there may be a statute, but when you look, there is no statute, and the officer is obliged to know the law. The officer can't go on general notions. The officer actually looks at the law, and it's clear when you look at these statutes, which are unambiguous, clear on their face, that they do not prescribe this kind of action. Well, one does in a way, doesn't it, in the sense that it says that you shall obey traffic signs, and there's a traffic sign clearly there. There are cars stopped, and rather than stop and obey the traffic line, the motorist here chooses to turn off to the left and avoid the traffic stop sign. Well, let me point out two things. The title of the statute is obedience to traffic control devices, not avoiding, and there are actually statutes, when they actually write statutes that prohibit the action that she did, they're entitled avoiding traffic signals or cutting corners. They're very specific, and the language is very specific. Well, that was going to be my question. Is avoidance of a sign the type of behavior that the statute prohibits? Not this statute. One, it doesn't have the title. And two, if you read the language of it, it says the driver shall obey the instructions of any traffic control device applicable thereto. When she turns off that road. What part of stop didn't she understand? Well, when she turns off the road, that stop sign is no longer applicable to her. Because she avoids it, right? Right. So that's what we're talking about here is avoidance. Right, but there's nothing illegal to turn off the roadway. If it were, if she turned right into her driveway, your reasoning would apply that she avoided the stop sign. If she had turned left and gone into another street to avoid the stop sign, and then let's say she turned left and then turned right and gone on State Road 97, she would have avoided the stop sign. Well, if I read Sorrells v. McKee correctly, it says, it's not necessary that the alleged acts have been held previously unconstitutional, as long as the unlawfulness of the defendant's actions are apparent in light of the preexisting law. So if, in fact, one can suggest that 46-61050 says that your client should have obeyed the instructions of an official traffic control device, and in order to avoid obeying, she turns, why is that then a violation that, even if a violation of a constitutional right, how can it be clearly established? Well, one, as the Court says, we don't need a precedent in appellate courts, because Well, I'm not looking for a precedent. I don't think there's a case directly on point. But there certainly is unlawfulness of the actions if 46-61050 is interpreted, and therefore it doesn't seem to me that the policeman should have known. Well, I would submit under the statutes, which are clear, that the actions she took are not illegal. If she, for instance, if she turned into the Shell Station lot, had bought gas in order to avoid the stop sign, and then got on SR 97, would we be here? No. If she had stopped in order to avoid the stop sign, but bought fruit at the stand, and I would submit that even though the stand was closed, oftentimes, she stopped to see if someone would come out of the Mini Mart, and oftentimes they did and served her even when the stand was closed. If she had stopped at the fruit stand in order to avoid the stop sign, we wouldn't be here either. Well, all of those, we wouldn't be here, because the policeman wouldn't have given her a ticket. If she had stopped at any one of those, but the fact that she didn't, she just failed to obey the instructions of the traffic control device in order to get on the road, he gave her the ticket. Well, I would submit the statute itself only applies to people who are traveling on that road. Once she turns off the road, it doesn't apply to her. It would be a different thing, and I would submit that this statute applies to someone who goes to that stop sign and fails to stop, and that's the only person who applies to it. What is goes to? That is the problem. Blows through. Goes to. Right. That's the problem. How far down that line can she go without being under the control of the stop sign? Can she go down? Now, the diagram that you've effectively put up there suggests that she left the road some ways. How far can she go? Can she turn just in front of the fruit stand and get away with it? Yes, sir. My point to you was the only way she can violate this statute is to, you misunderstood me, blow through that stop sign and fail to stop. Don't they use the term cut the corner here in the Ninth Circuit? Is she cutting the corner here? She undoubtedly is cutting the corner. That wasn't her intent. She undoubtedly was cutting the corner, but there are statutes that explicitly prohibit that that didn't exist in this jurisdiction. So you're really suggesting she can go right up to the stop sign, turn left or right, and not have violated this statute? That's correct. This statute applies only to the people that go up to that stop sign. But even given that, in this particular case, it was clearly established based on her actions that she did not violate the statute and that a reasonable police officer could not have believed that she violated the statute. Stop means stop only when you get to it. Exactly. When there's three, five cars in front of you, you don't have to stop. You can just keep going until you've filled the room. Either. I think it's the third rule of thermodynamics that two bodies cannot occupy the same space at the same time. Right. It takes effect. Maybe. I hope it's the third rule. Thank you very much for your argument. I think you had a couple of seconds left. Eight seconds, Your Honor. Your Honors, and I would submit that the very fact that we can intellectually debate what those statutes mean in this courtroom proves that my client should have qualified immunity. I have a question. I have a question. Suppose the panel concludes that the chief had a reasonable basis for the stop. There apparently is a wide dispute about what happened after the stop. Ms. Solis says she was basically assaulted. The officer says he was assaulted. Can that be sliced apart legally? I believe so, Your Honor, because at trial the jury won't be asked to determine the legality of the stop. The jury will simply be asked to determine if after the stop there was excessive force used or not. Okay. Thank you. Thank you very much. You always appreciate a candid response, and I appreciate that. Thank you very much. All right. Thank you. Case 09-35497, Solis v. City of Brewster is here submitted.
judges: Lucero, Hawkins, Smith N. R.